### SAMUEL TOOKER *v.* GEORGE W. GORMER.

The declarations of a party in respect to the subject matter of a suit, may·always be given in evidence against him, and especially so when such statements have been made under oath as a witness in a court of justice in another cause.

The declarations of a third person, neither a party nor a privy, and not part of the *res gestæ*, are receivable only for the purpose of contradicting him when he has been examined as a witness against the party, who offers such statement in evidence with the design of impeaching him, and it is then receivable only after he has been asked, while under examination, if he has made such a statement or declaration.

But if the declarations be improperly received, the error will be cured by the adverse party's calling such person to the stand as a witness, and examining him in respect to such declarations, as well as upon the subject matter of the suit generally.

Where goods are entrusted to a common carrier, accompanied with a bill and instructions not to deliver the goods unless paid therefor by the consignee, he is liable to the consignor for a delivery without payment being exacted. By thus assuming to act with the goods as his own, he is answerable for their value ; but he may discharge himself from liability by procuring their return.

*It seems* that an endorsement upon the bill, "Please collect the bill," is a mere request, with which the carrier may or may not comply ; and is not, of itself, sufficient evidence of an undertaking or agreement on his part not to deliver the goods unless paid for.

APPEAL by defendant from a judgment of the First District Court. In May, 1856, the plaintiff delivered to the defendant's express,

running between New York and Bloomfield, a cask of crockery to be carried to one A. Livingston, with directions to collect the bill therefor on delivery. A Mr. Kent was employed at the time as the driver of the express. The goods having been delivered without collecting the bill, an action was commenced therefor against Mr. Kent, in which judgment was rendered against the plaintiff, it appearing that Mr. Kent was not the owner of the express. This action was then brought against the present defendant. Upon the trial, a witness who was called for the plaintiff testified that he was present at the trial of the suit against Mr. Kent; that the present defendant was called on that trial as a witness for the defence, and testified that, at the time the goods in question were given to the Bloomfield express, he was its owner, and Mr. Kent was employed by him as driver. Also, that Mr. Kent was sworn on that trial, and testified that he had taken the goods to West Bloomfield, with instructions not to deliver them without the money; but that he left them at a store for Mr. Livingston, the consignee, and they had been delivered, and the bill not paid. This testimony as to the evidence of Kent and the defendant on the former trial, was objected to; but the objection was overruled and an exception was taken.

Charles Kent was called as a witness for the defendant, and testified that he was the person previously sued for having delivered the goods without collecting the money; that he was never directed not to deliver the goods without collecting the money; that the only direction ever given to him was contained in the bill itself, on which was written " Please collect the bill;" but he did not contradict the testimony of the plaintiff's witnesses that he had sworn, on the other trial, that such directions were given to him. Judgment was rendered for the plaintiff, and the defendant appealed.

*C. F. Wetmore,* for the appellant.

*E. R. Bogardus,* for the respondent.

By the Court, DALY, First Judge.—The statements made by

the defendant under oath, as a witness in the suit between the plaintiff and Kent, were admissable to charge him. *Collet* v. *Lord Keith*, 4 Esp. 212; *Milward* v. *Forbes*, Id. 171. The declarations or statements of a party in respect to the subject matter, may always be given in evidence against him, and especially so when the statement was made by him as a witness in a court of justice.

The declarations of Kent, as they formed no part of the *res gestæ*, were not admissible. The declarations or statements of one, neither a party nor a privy, are receivable only for the purpose of contradicting him when he has been examined as a witness against the party who offers the prior statement with the design of impeaching him, and is then only receivable if he has been asked, while under examination, if he has made such a statement or declaration. But although the evidence, when offered, was improperly received by the justice, the defendant cured the error by calling Kent to the stand as a witness, and examining him, not only in respect to the declarations attributed to him, but upon the subject matter of the suit generally. The most material declaration of Kent, given by the plaintiff in evidence, was his statement to the witness Tooker that he had taken the goods to West Bloomfield with directions *not to deliver them without the money*. When Kent was examined as a witness by the defendant, he testified that the only instructions he ever received respecting the goods, was what was written on the bill accompanying them—" Please collect the bill." This formed no part of his duty as a carrier. It was a mere request, which he might or might not comply with; and would not, of itself, be sufficient evidence of an engagement or undertaking on the part of the defendant not to deliver the goods unless paid for. But Kent did not deny that he told Tooker that, when he took the goods, he received directions not to deliver them without the money. The defendant did not interrogate him upon that point, and the justice therefore had the right to conclude that he made such a statement. If he did, it was in conflict with what he swore upon the trial; and, as there was no denial that such a statement had been

made by the witness, nor any explanation given to obviate its effect, or show that it was otherwise or different than as testified to by Tooker, it was for the justice, under the circumstances, to say whether that statement was the true one, or the one given by the witness upon the trial. If the witness had delivered the package in neglect of such instructions, then he was interested in the event of the suit, as he would be liable over to his principal, if there should be a recovery against the principal for the witness' neglect; and this was a matter to be weighed by the justice in considering the conflict between his previous statement—after an ample opportunity had been afforded for explaining it, if it could be explained—and his statement on the trial. The finding of a justice, like that of a jury, upon such a point, will never be disturbed or reviewed by an appellate tribunal.

That the error of admitting the declaration of Kent was cured by the defendant's making him a witness, will appear very plainly. These declarations or previous statements of the witness were clearly admissible to impeach or contradict the testimony he gave on behalf of the defendant; and, as they were already in evidence, it would have been an idle ceremony to recall the witness Tooker to give the same testimony over again. Where it is designed to impeach the credit of a witness by showing that he has made statements inconsistent, or in direct conflict with what he has sworn to upon the trial, it is necessary for the party, who designs to impeach his credit, to ask him, while he has him under examination, if he has made such statements, that the witness' attention may be called to the fact, and an opportunity afforded him either of denying it, or of stating what he did say, or of giving any explanation that may tend to support the consistency or integrity of his sworn statement. But in this case the witness and the defendant had all the benefit which this rule was designed to secure. Kent was in court when Tooker was examined. He was called himself, afterwards, as a witness, and an ample opportunity was afforded him to deny the truth of Tooker's statement, or to give any explanation that either he or the defendant deemed essential. The defendant neglected, or did

not think fit, to interrogate him upon the point; and it does not lie with him now to ask a reversal of the judgment upon this ground, when he had every advantage upon the trial which this rule of evidence could afford.

If the justice had believed the statement of Kent upon the trial, that he left the package at a store, where he was directed to leave it by the person to whose care it was addressed, and that all the instructions he received with it was to collect the bill, it would have been an ample defence. But it was in evidence that Kent told Tooker that he had directions not to deliver it without the money, but had delivered it without the money ; that he had not been as careful as he should have been, as he had just bought out the express, and was anxious for patronage. Tooker's testimony to this effect was not denied, qualified, or questioned by Kent when he came upon the stand. The justice, therefore, was bound to conclude that Kent had so told Tooker, and was at liberty to infer that what he then told was the truth. He was at liberty to infer it from the silence of Kent respecting a statement so materially in conflict with the facts, as he represented them upon the trial, from the omission of the defendant to question him upon the point, and from the fact that, after a suit was commenced against the defendant, there may have been a strong motive on the part of Kent to represent the facts to be otherwise, to prevent a recovery which might lay the foundation for a subsequent suit against him.

I think there was sufficient in the evidence to warrant the conclusion of the justice that the defendant agreed, when the package was entrusted to him, not to deliver it unless the money was paid ; and if he did, he is answerable for its value if he assumed the responsibility of delivering or parting with it without receiving the money. By such an act he takes the risk, which the owner was not willing to take, of trusting to the credit or future ability to pay, of the person to whom he delivers it. It was in evidence, and not contradicted by Kent, that Kent said he should not have delivered the goods, but he thought Livingston was responsible. So far, therefore, as respects the defendant's liabil-

ity to the plaintiff, it is the same as if he had collected the money. He, or the agent to whom he entrusted the matter, saw fit to give credit to a man to whom the seller was not willing to give credit. This was assuming to act with the property as his own, and, having thus taken upon himself all the authority of an owner, he must pay for the goods, unless he can get them back and discharge himself from responsibility by advising the plaintiff that they are in his custody at West Bloomfield, subject to his order. The responsibility of the defendant does not arise from his implied duty as a carrier, but from the special contract which the justice has concluded that he made, not to deliver the goods without the money. The contract which the law implies, may be enlarged by the agreement of the parties, and then the carrier is bound to the full and exact performance of the particular agreement he makes. Story on Bailments, §§ 81, 82 ; Angell on Carriers, §§ 37, 59, 60. If Livingston, or the person to whose care the goods were sent, was not prepared or willing to pay for them, when advised by the defendant's agent at West Bloomfield that they were in his custody and ready for delivery, it was the duty of the defendant's agent to retain the package and advise the plaintiff that it had not been paid for, and was held subject to his order. The plaintiff then became responsible for the expense of its safe keeping, and the position and responsibility of the defendant was changed to that of an ordinary bailee for hire, or warehouseman.

To entitle the plaintiff to recover in a case like this, all that it was necessary for him to show was, what he did show, that the defendant wrongfully delivered the goods. This, *prima facie*, is sufficient to entitle him to recover their value. *Devereux* v. *Barclay*, 2 B. & Ald. 703 ; *Cooper* v. *Willamot*, 1 Man. Gr. & Scott, 672 ; *Loeschman* v. *Machin*, 2 Starkie, 311 ; *Bryant* v. *Wardell*, 2 Exchq. 479 ; *Valpy* v. *Saunders*, 12 Jurist, 483 ; 1 Chitty's Pl. 140, 141.

Judgment affirmed.